Essie L. SWANN, Administratrix of the Estate of Beatrice Swann Pratt, Appellant,

v.

Marvin M. WALDMAN and Daniel N. Steven, Appellees.

No. 82–761.

District of Columbia Court of Appeals.

Argued April 5, 1983.

Decided Aug. 26, 1983.

Charles C. Parsons, Washington, D.C., for appellant.

Joseph F. Cunningham, Washington, D.C., with whom Robin A. Rosenbluth, Washington, D.C., was on brief, for appellees.

Before NEWMAN, Chief Judge, and FERREN and TERRY, Associate Judges.

TERRY, Associate Judge:

Appellant seeks review of an order granting summary judgment to appellees, her former attorneys, whom she had sued for legal malpractice. She argues that there were genuine issues of material fact and that appellees' motion for summary judg-

ment was therefore erroneously granted. We agree with appellant, reverse the order of the trial court, and remand the case for trial on the merits.

I

Appellant, the administratrix of her deceased daughter's estate, retained appellees to bring suit against the physicians and hospital allegedly responsible for her daughter's death. Appellees filed a wrongful death action in the Superior Court in appellant's name as administratrix, including also a survival claim for the benefit of the decedent's four children.

During the preparation of their case, appellees encountered some difficulty in obtaining expert testimony to support their theory of medical malpractice. One physician, an internist, originally agreed to testify but later changed his mind and withdrew from the case. Eventually they engaged Dr. Anne Dimitroff, an internist, as an expert witness.[1] Thereafter appellees never sought to recruit any other medical experts to appear as witnesses, despite the fact that Dr. Dimitroff's credibility was seriously impeached during her deposition, and despite the fact that appellees had previously been advised by another of their own expert witnesses that they would need an expert in obstetrics and gynecology to support the testimony of an internist.

On April 11, 1979, less than three weeks before the scheduled trial date, Dr. Dimitroff informed appellees for the first time that she would not come from Las Vegas, where she lived, to testify at trial unless she first received a check for $2,500. When appellees told this to Mrs. Swann, she replied that she did not have the money. Appellees then advised Mrs. Swann that without an expert witness, the case was in serious jeopardy and that she should consider a settlement. Mrs. Swann refused to settle and requested appellees to have the case continued. Appellees failed to do so.[2]

---

1. Dr. Dimitroff was apparently a friend of appellee Steven's family.

2. Mrs. Swann stated in an affidavit that appellee Steven had told her that he had requested a

On April 23 appellees called ·Mrs. Swann and told her to appear in court the next day, although they did not explain why her presence was required. On April 24, with counsel for both sides present, appellees told the court that they wanted to withdraw from the case because of what they perceived as Mrs. Swann's unwillingness to cooperate and her apparent lack of confidence in them. The trial judge wanted to be sure that Mrs. Swann understood the options available to her before any further action was taken in the form of either a withdrawal or a settlement. Accordingly, the judge, to preserve her own impartiality, sent the parties to a neutral judge to discuss the withdrawal. When the parties returned from their *in camera* conference, they announced a settlement to the trial judge. Mrs. Swann agreed to dismiss the suit with prejudice in exchange for approximately $2,200 in funeral and legal costs, to be paid by the physicians' insurance carriers. A praecipe of dismissal was filed that day. Mrs. Swann never collected the $2,200, however, because a subsequent attorney (not her present attorney) wrote to opposing counsel instructing them not to pay and stating that he was going to have the settlement set aside. This was never done.

In November of 1980, appellant filed suit against her former attorneys alleging negligence, breach of fiduciary duty, and fraud in connection with their handling of the wrongful death and survival action. Specifically, appellant alleged that her attorneys had failed to prepare the case adequately by obtaining the appropriate expert witnesses, had failed to inform her that her case could go to trial without the presence of an expert witness, had failed to seek a continuance which she requested, and had coerced her into accepting an unsatisfactory settlement. After the taking of many depositions, including those of appellant, both appellees, several physicians, and at least three legal experts, the trial court granted appellees' motion for summary judgment.

## II

Summary judgment is appropriate only when there are no material facts in issue and when it is clear that the moving party is entitled to judgment as a matter of law. *Maddox v. Bano,* 422 A.2d 763 (D.C. 1980); *Willis v. Cheek,* 387 A.2d 716 (D.C. 1978); Super.Ct.Civ.R. 56. On appeal, this court must view the record in the light most favorable to the non-movant, and any doubt as to the existence of a factual dispute must be resolved against the movant. *Yasuna v. Miller,* 399 A.2d 68 (D.C.1979); *Turner v. American Motors General Corp.,* 392 A.2d 1005 (D.C.1978).

In this case there are several genuine issues of material fact precluding summary judgment for either party. Among those matters yet to be resolved are whether appellees lied to appellant about attempting to obtain a continuance, whether appellees were negligent in failing to obtain an expert witness in the field of obstetrics and gynecology, whether appellees were negligent in failing to make adequate fee arrangements with Dr. Dimitroff prior to trial, and whether appellees coerced appellant into accepting an unfavorable settlement. There may be other issues as well. It is clear, in any event, that the existence of controverted material facts made the pre-trial grant of summary judgment erroneous.

Appellees argue, however, that even if they were negligent in their handling of appellant's wrongful death and survival claims, appellant has suffered no damages, and therefore they were entitled to judgment as a matter of law.[3] Relying on D.C. Code § 21–120(a) (1981), they assert that appellant can still recover on her wrongful

---

continuance but the court had refused to grant it.

**3.** A legal malpractice action based on a claim of negligence cannot be successfully main- tained without, *inter alia,* a showing of damages. *Niosi v. Aiello,* 69 A.2d 57, 60 (D.C. 1949).

death and survival claims because they were not finally disposed of by the settlement. Appellees' reliance on this statute is misplaced.

■ D.C.Code § 21–120(a) provides in pertinent part that "[a] person entitled to maintain or defend an action on behalf of a minor child ... is competent to settle an action so brought ... but such settlement is not valid unless approved by a judge of the court in which the action is pending." Appellees ignore the fact that section 21–120(a) pertains only to survival actions and not to wrongful death actions.[4] The settlement of appellant's wrongful death claim did not require court approval to be valid. Consequently, the wrongful death claim was merged into the settlement agreement which appellant's attorneys negotiated and no longer exists as a viable cause of action. Appellant is therefore free to assert that appellees' negligence deprived her of a cause of action, clearly a basis for damages. *Winter v. Brown*, 365 A.2d 381 (D.C.1976).

Nor does section 21–120(a) invalidate the settlement of appellant's survival action. Because the trial judge in the medical malpractice case approved the settlement agreement, that settlement is valid under section 21–120(a). Thus appellant has been injured through the compromise of a once viable claim. Whether, and to what extent, she is entitled to recover damages for that injury can only be determined after further proceedings in the trial court.

*Reversed and remanded.*

---

4. A wrongful death action must be brought by the executor or administrator as the decedent's personal representative, not by any surviving family members in their own behalf. D.C.Code § 16–2702 (1981); *see Group Health Ass'n v. Gatlin,* 463 A.2d 700 (D.C.App.1983).