**Steven Slater BOYNTON, Appellant,**

v.

**J. Audrey Havice LOPEZ, Appellee.**

**No. 81–763.**

District of Columbia Court of Appeals.

Argued Nov. 29, 1983.

Decided March 1, 1984.

James R. Treese, Washington, D.C., for appellant.

Richmond T.P. Davis, Washington, D.C., for appellee.

Before KERN, NEBEKER and MACK, Associate Judges.

NEBEKER, Associate Judge:

A jury awarded appellee compensatory and punitive damages under a complaint sounding in fraud. Appellant raises three issues. First, he argues that the evidence presented at trial did not support a finding of fraud. Second, he argues that the fraud count should have failed along with the contract count. Third, he challenges the appropriateness of the damage awards. We find no error regarding the fraud count or the award of compensatory damages. However, we conclude that the award of punitive damages was not supported by the evidence. Therefore, we affirm in part and reverse in part.

The evidence at trial showed that in 1976 appellee filed suit against the Hartford Insurance Company for recovery of benefits for water damage to her residential property. On August 4, 1976, one day before the case was scheduled to go to trial, appellee agreed to drop the suit. Both parties testified that appellant, an attorney, told appellee she would receive $10,000 in value for agreeing to settle her case before trial. The parties disagree about the sources of the settlement and the time by which appellee was to receive payment. Appellee understood that the entire amount was to be paid by the insurance company, and that she would receive full payment by the end of that same week. Appellant stated that the insurance company agreed to pay only $1,451.76. The remainder was to consist of appellant's forgiveness of $2500 in legal fees appellee owed him, and $6,000 was to be paid by Mr. Robert Flynn, appellee's former attorney.

Thereafter, appellee received $1,451.76 from the insurance company and appellant waived his legal fees. On October 26, 1978, appellee filed suit against appellant on the contract for $8,549.24, the difference between the amount of money she said appellant told her she would receive from the insurance company, and the actual amount of payment. She also included a claim for $50,000 punitive damages. The trial court entered a directed verdict for appellant on the contract count. The jury, however, returned a verdict for appellee on the fraud count and awarded her $7,500 compensatory damages and $2,500 punitive damages.

The first issue raised by appellant is a challenge to the sufficiency of the evidence upon which the jury based its finding of fraud. The standard of review for this court to apply is "whether there is any substantial evidence which will support the conclusion reached by the trier of fact below." *Hart v. Cherner,* 178 A.2d 919, 920 (D.C.1962). In the instant case, as in *Hart,* the case turned on "whether certain representations were made and, if so, whether they were false." *Id.* at 920. Appellee testified that on August 4, 1976, the day before her case was set to go to trial, appellant called and asked her to accept a settlement offer of $10,000. There had been ongoing negotiations with the insurance company and appellee thought that the offer of $10,000 had been extended by the company as a result of appellant's efforts to settle the case. Appellee also testified that appellant told her she would receive the money by the end of that same week. A former law clerk, who was employed by appellant at the time of the settlement ne-

gotiations, testified that on August 4, 1976, appellant told her he was about to call appellee with a settlement offer of $10,000. The law clerk overheard the portion of appellant's telephone conversation with appellee where he told her she would receive the entire amount by Friday of that week. At appellant's request, the law clerk then spoke to appellee and advised her to accept the $10,000. It was only after the conversation with appellee was over that the law clerk learned from appellant that the insurance company had not increased its offer to $10,000 and that the figure accepted by appellee actually consisted of a three-part arrangement.

Appellant testified that before appellee accepted the offer, he fully explained to her the three sources from which the funds were available. Appellant confirmed that when he conveyed the settlement offer to appellee, he knew that Mr. Flynn, who had agreed to give appellee a promissory note worth $6,000, was having financial problems. Mr. Flynn admitted that he was experiencing financial difficulty and specifically stated that he did not have $6,000 available at that time.

█ All of this testimony provided substantial evidence for the jury to find that appellant's representation of the settlement offer, when compared with his knowledge at that time, constituted the tortious act. The possibility of a jury reaching a different conclusion on these same facts does not warrant a reviewing court to intervene. *Kruse v. District of Columbia,* 171 A.2d 752 (D.C.1961). We therefore may not disturb the finding of the jury.

█ Appellant also contends that once the court dismissed the breach of contract count, the fraud count should have been dismissed as well. He argued that in the absence of the formation of a contract, the fraud action based upon a fraudulent inducement to contract could not be sustained. This argument misstates the applicable rule of law. The two actions were based upon independent legal theories which require the proof of different facts.

In this jurisdiction, a party may raise separate claims. *See* Super.Ct.Civ.R. 8(e)(2). Here, the contract action stood independent of the tort count and although both theories arose from one factual setting, they exist separate and distinct from one another. Hence, the dismissal of one action did not disturb the legal underpinnings of the second count.

█ Finally, appellant asks this court to overturn the damage awards. With respect to the compensatory damages, he contends that the proof offered at trial did not justify the award of $7,500. As a general rule, courts will intervene in the award of compensatory damages only when the jury's verdict "indicates prejudice, passion, or partiality, or when it must have been based on oversight, mistake, or consideration of an improper element." *Spar v. Obwoya,* 369 A.2d 173, 180 (D.C.1977) (citing *Lester v. Dunn,* 154 U.S.App.D.C. 399, 475 F.2d 983 (1973)). Given that appellee received only $1,451.76 of her total settlement expectation of $10,000, we do not view the jury award of $7,500 compensatory damages to be unjustified, nor do we believe the award suggests error of any kind. *See Fairmount Glass Works v. Cub Fork Coal Co.,* 287 U.S. 474, 53 S.Ct. 252, 77 L.Ed. 439 (1933).

█ The punitive damages award, according to appellant, was incorrect because the tortious act was not "aggravated by evil motive, actual malice, deliberate violence or oppression." *Price v. Griffin,* 359 A.2d 582, 589 (D.C.1976) (quoting *Black v. Sheraton Corp. of America,* 47 F.R.D. 263, 271 (D.D.C. 1969)). The tortious act must be "willful and outrageous conduct." *Spar v. Obwoya, supra,* 369 A.2d at 180 (quoting *Harris v. Wagshal,* 343 A.2d 283, 288 (D.C.1975)), or it must result in gross fraud. *Spar v. Obwoya, supra,* 369 A.2d at 180. *See Mariner Water Renaturalizer of Washington, Inc. v. Aqua Purification Systems, Inc.,* 214 U.S. App.D.C. 248, 253, 665 F.2d 1066, 1071 (1981). While the record supports the finding of intentional misrepresentation, the record is devoid of evidence showing those

particular elements necessary for an award of punitive damages. *See Price v. Griffin, supra,* 359 A.2d at 589. We note that appellant enjoyed no financial benefit from the settlement agreement.[1] We conclude that the punitive damages award was unjustified.

*Affirmed in part and reversed in part.*

1. Moreover, when considering the appropriateness of a punitive damages award, lawyers are to be treated as anyone else. We are persuaded, that for punitive damages, actions do not become more egregious simply because of the professional obligations of the person committing them. There are other well-established mechanisms for disciplining members of the legal profession.