Revised April 16, 1999

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 98-60123

_____

JOSEPH J. MACKTAL, JR.,

Petitioner,

VERSUS

UNITED STATES DEPARTMENT OF LABOR,

Respondent.

_____

Petition for Review of an Order of the
United States Department of Labor

_____

April 13, 1999

Before GARWOOD, DAVIS, and DeMOSS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Petitioner Joseph J. Macktal requests review of a final order of the Secretary of Labor, pursuant to Section 210(c)(1) of the Energy Reorganization Act ("ERA"). 42 U.S.C. § 5851(c)(1) (1978). More particularly, he seeks reversal of a Final Decision and Order of the Administrative Review Board ("ARB"), dismissing his claim against Intervenor-Respondent Brown & Root, Inc. ("Brown & Root") under the whistle blower protection provision of the ERA. ERA § 210(a), codified at 42 U.S.C. § 5851(a) (1978) ("Section 210"). For reasons that follow, we deny Macktal's petition for review and affirm the ARB's Final Decision and Order.

Brown & Root was the general contractor in the construction of the Comanche Peak Steam Electric Station ("CPSES"), a nuclear power plant assembled during the 1980s near Fort Worth, Texas. Brown & Root hired Macktal in January 1985 as a journeyman electrician at CPSES. He was promoted to electrical foreman in May 1985.

As foreman, Macktal supervised a crew of employees inspecting electrical conduits to ensure that they had been properly installed. In this role, he developed a number of safety concerns, which he reported to his immediate supervisor. He was subsequently given a counseling report and demoted to journeyman electrician in September 1985. He was reassigned to the night shift, where he was issued a safety violation for failing to wear proper eye protection when operating a band saw. A few days later, he was reassigned once more to the day shift. Macktal testified that he was subsequently asked to perform various activities in violation of safety procedures. He made safety-related complaints to his supervisor, the general foreman, and SAFETEAM, an independent safety group established by and operated under the direction of the CPSES "site owner," Texas Utilities Electric Co. He alleges that he was then subjected to numerous forms of harassment, including citation for an unwarranted safety violation, loss of his tools, a delayed paycheck, failure to receive a personal phone call, and refusal of management to grant a request for leave without pay. Macktal reported this alleged harassment to SAFETEAM.

On January 2, 1986, Macktal was given a counseling report for

excessive absenteeism. He responded the next day with a handwritten memorandum in which he objected to the counseling report and stated that his "plan of action" was to file a noncompliance complaint with the Nuclear Regulatory Commission ("NRC") concerning the safe operation of CPSES. He also stated in the memorandum: "In a[n] effort to preserve my health and avoid any further harassment, I wish to be relieved of my duties until the TEC, NLRB, NRC can resolve these matters." A few hours after Macktal submitted this memorandum, his employment with Brown & Root was terminated. Macktal did not object to this action, and testified that he understood he was being terminated. At the time of his termination, Macktal had not yet contacted any government agency concerning any safety violations, and did not do so until several months later.

In February 1986, Macktal filed a claim against Brown & Root with the Secretary of Labor under Section 210, alleging that he had been constructively discharged. The Wage and Hour Division of the Department of Labor notified Macktal in March 1986 that his claim lacked merit. Macktal requested a hearing before an administrative law judge ("ALJ"). The ALJ encouraged the parties to settle, and the parties signed a settlement agreement in January 1987. Macktal later sought to have the settlement set aside. In November 1989, the Secretary issued an order rejecting one paragraph of the settlement as contrary to public policy, but otherwise approving the settlement. This court reversed the Secretary's order in Macktal v. Secretary of Labor, 923 F.2d 1150 (5th Cir. 1991), holding that the Secretary was required to accept or to reject the

3

settlement in its entirety. On remand, the Secretary issued a new order in October 1993 disapproving the settlement and remanding the case to the ALJ for a hearing on the merits.

The ALJ finally held a hearing on the merits in February 1996, more than a decade after the original claim was filed. Prior to the hearing, Brown & Root twice moved for summary judgment. At the hearing, the ALJ ruled that internal whistle blowing was not protected under Section 210 and the prior rulings of this court, and that the ALJ therefore would not consider Macktal's internal complaints as support for his claim. In November 1996, the ALJ issued a Recommended Decision and Order granting Brown & Root's motion for summary judgment. Macktal filed exceptions to the ALJ's Recommended Decision and Order. In January 1998, after further briefing, the ARB issued a Final Decision and Order dismissing Macktal's complaint, finding that Macktal had not engaged in any protected activity under the ERA. This timely petition followed.

## II.

Review of the ARB's Final Decision and Order is governed by the standard of review set forth in the Administrative Procedure Act, 5 U.S.C. § 706(2). This court must affirm the Secretary's decision unless it is arbitrary, capricious, an abuse of discretion, or otherwise contrary to law, or unless the decision is not supported by substantial evidence. 5 U.S.C. § 706(2)(A). Agency interpretations of circuit law, however, are reviewed de novo. See Harris v. Railroad Retirement Board, 3 F.3d 131, 133 (5th Cir. 1993).

4

III.

Macktal argues that the ARB erred in finding that he had not engaged in any protected activity under Section 210 prior to his termination by Brown & Root. He contends that the ARB misinterpreted circuit precedent to foreclose recovery. We disagree. Though our reasoning differs somewhat from that of the ARB, we nonetheless conclude that the ARB acted correctly in dismissing Macktal's complaint.

Prior to the 1992 Amendments to the ERA, Section 210 provided as follows:

> No employer . . . may discharge any employee or otherwise discriminate against any employee with respect to his compensation, terms, conditions, or privileges of employment because the employee (or any person acting pursuant to a request of the employee)--
>
> > (1) commenced, caused to be commenced, or is <u>about to</u> commence or cause to be commenced a proceeding under this chapter or the Atomic Energy Act of 1954, as amended, or a proceeding for the administration or enforcement of any requirement imposed under this chapter or the Atomic Energy Act of 1954, as amended;

42 U.S.C. § 5851(a) (1978) (emphasis added).[1]

The complainant has the initial burden of establishing a <u>prima facie</u> case of discrimination under this provision. To meet this

_____

[1] In 1992, Congress amended the ERA to include explicit protection for internal complaints. The act as amended protects an employee who "notified his employer of an alleged violation of this chapter or the Atomic Energy Act of 1954," 42 U.S.C. § 5851(a)(1)(A), and an employee who "refused to engage in any practice made unlawful by this chapter or the Atomic Energy Act of 1954, if the employee has identified the alleged illegality to the employer," 42 U.S.C. § 5851(a)(1)(B). These amendments do not apply here, because the present claim was filed well before the October 24, 1992 date of enactment.

burden, the complainant must show: (1) that he engaged in protected activity; (2) that the employer was aware of the protected activity; (3) that the employer took some adverse action against him; and (4) that the evidence is sufficient to permit an inference that the protected activity was the likely reason for the adverse action. See County v. Dole, 886 F.2d 147, 148 (8th Cir. 1989).

The principal question before us is whether the ARB erred in determining that Macktal failed to show that he was engaged in protected activity at the time of the alleged adverse actions.[2] The ARB's determination that Macktal was not engaged in protected activity under Section 210 is based on this court's opinion in Brown & Root, Inc. v. Donovan, 747 F.2d 1029 (5th Cir. 1984). The similarities between Brown & Root and the present case are substantial. The complainant in Brown & Root, Charles Atchison, was a field quality control inspector for Brown & Root at CPSES. In the course of his duties, Atchison filed several nonconformance reports alleging that certain work at CPSES did not conform to construction specifications. He was later discharged and filed a complaint under Section 210. On review from a final order of the Secretary of Labor finding that Brown & Root's actions had violated Section 210, this court held that Atchison's internal quality control reports did not

---

[2]Brown & Root argues that, irrespective of the merits, Macktal's claim has been extinguished by his refusal to return settlement funds he received from Brown & Root. That issue was addressed in an earlier order by the Secretary of Labor, dated July 11, 1995, which Brown & Root did not appeal. Regardless, it was not raised in the Final Decision and Order at issue here, and therefore falls outside of this court's jurisdiction under 42 U.S.C. § 5851(c)(1).

rise to the level of protected activity under Section 210. <u>Id.</u> at 1031. The court reasoned that Section 210 was "designed to protect 'whistle blowers' who provide information to government entities, not to the employer corporation." <u>Id.</u> at 1034. The court further stated that "employee conduct which does not involve the employee's contact or involvement with a competent organ of government is not protected under section 5851." <u>Id.</u> at 1036.

Macktal seeks to distinguish his case from <u>Brown & Root</u> on two grounds. First, he notes that Atchison's nonconformance reports were all routine internal reports filed pursuant to Atchison's job-related responsibilities, whereas Macktal "went beyond his chain-of-command and contacted SAFETEAM, a semi-independent and NRC-endorsed program specifically designed to review whistleblower allegations." Macktal points out that SAFETEAM's own internal operating procedures both mandated that SAFETEAM report certain violations on its own to the NRC and recognized that contacts with SAFETEAM were a "forewarning of a later allegation to the NRC or another regulatory body." Second, Macktal notes that Atchison never gave any indication that he was about to contact the NRC or any other official government agency, whereas Macktal delivered a handwritten memorandum to his superiors at Brown & Root just hours before his termination advising management that he was going to contact the NRC. Macktal argues that these extra actions on his part, absent in <u>Brown & Root</u>, bring his conduct within the sphere of protected activity under the "about to" language of Section 210. He notes that the <u>Brown & Root</u> panel expressly omitted the phrase

7

"about to" when it quoted the "relevant language" of Section 210. See id. at 1031. Thus, he argues, the panel's reasoning does not extend to that portion of the statute. We find these distinctions unavailing.

A.

With respect to Macktal's complaints to SAFETEAM, we are governed by this court's opinion in Ebasco Constructors, Inc. v. Martin, No. 92-4576 (5th Cir. Feb. 19, 1993).[3] The complainant in Ebasco, Ronald J. Goldstein, was employed by Ebasco Constructors, Inc. as a craft supervisor in the construction of a nuclear power plant for Houston Lighting and Power Company. In 1985, Goldstein registered several safety and quality concerns with his supervisor, with Ebasco's quality assurance group, and with the SAFETEAM program at his plant. He subsequently received several low performance reviews, was reassigned several times to increasingly clerical jobs, and was ultimately laid off. Goldstein filed a claim with the Department of Labor alleging a violation of Section 210. On petition for review from a final order of the Secretary finding that Ebasco had violated Section 210, this court vacated, holding that Goldstein's claim was "clearly controlled" by Brown & Root. Id., slip op. at 3. The court found that "[t]he complaints filed by Goldstein were purely internal." Id., slip op. at 4. More importantly, the court expressly determined that Goldstein's complaints to SAFETEAM "did not constitute either a complaint to an

_____

[3]Unpublished opinions issued before January 1, 1996 are binding precedent in this circuit. See 5TH CIRCUIT RULE 47.5.3.

8

agency or commencement of a proceeding under § 5851." Id. Thus, the court concluded, none of Goldstein's complaints were protected under Section 210. Id.

Ebasco is clearly controlling in the present case. This court adheres strictly to the maxim that one panel of the court cannot overturn another, even if it disagrees with the prior panel's holding. See Texas Refrigerator Supply v. FDIC, 953 F.2d 975, 983 (5th Cir. 1992). A "purpose of institutional orderliness" is served by "our insistence that, in the absence of intervening Supreme Court precedent, one panel cannot overturn another panel, regardless of how wrong the earlier panel decision may seem to be." Montesano v. Seafirst Commercial Corp., 818 F.2d 423, 425-26 (5th Cir. 1987). Nothing in the record or in the briefs distinguishes Macktal's complaints to SAFETEAM here from Goldstein's complaints to SAFETEAM in Ebasco, nor does Macktal suggest that any intervening Supreme Court precedent exists to justify overturning Brown & Root or Ebasco. We therefore find that Macktal's complaints to SAFETEAM are not protected activity under Section 210.[4]

B.

Macktal's memorandum expressing his intention to file a complaint with the NRC presents a more difficult issue. As Macktal observes, the Brown & Root court did not consider the "about to"

---

[4]Macktal urges us in the alternative to take this matter en banc on the court's own motion and to overrule Brown & Root. We decline to do so. Macktal may, of course, file a formal suggestion for rehearing en banc at the appropriate time. See FED. R. APP. P. 35.

9

provision of Section 210, because that provision was irrelevant under the facts of Brown & Root. Contrary to the ARB's findings, this strongly suggests that the issue of whether Macktal's memorandum was protected activity under Section 210 is not directly governed by Brown & Root or Ebasco. The Secretary notes that this very same argument was unsuccessfully argued before this court in Ebasco, and that although the court did not specifically address the argument, it nonetheless concluded that Brown & Root was controlling. A prior panel's silence on a particular issue, however, is not binding on this panel. It therefore falls to us to determine whether a written expression of intent to file a complaint with the NRC constitutes protected activity under Section 210. We conclude that it does.

We need go no further than the plain language of Section 210 to conclude that a written expression of intent to file a complaint with the NRC is protected activity under the ERA. Section 210 protects from retaliatory action any employee who "commenced," "caused to be commenced," or "is about to commence or cause to be commenced" a proceeding under the ERA or the Atomic Energy Act. 42 U.S.C. § 5851(a)(1) (1978). When the Brown & Root panel concluded that "employee conduct which does not involve the employee's contact or involvement with a competent organ of government is not protected" under Section 210, 747 F.2d at 1036, it was plainly referring only to the "commenced" and "caused to be commenced" provisions. Were we to hold that present contact or involvement with a competent organ of government is a requirement of the "about

10

to commence" provision as well, there would be nothing to distinguish that provision from the other two; it would become a nullity. If the "about to commence" provision is to have any distinct meaning at all, it must encompass some employee actions prior to actual contact with a competent organ of government. A written expression of intent to file a complaint with the NRC falls squarely within that sphere of action. We therefore conclude that Macktal's memorandum expressing his intention to file a complaint with the NRC was protected activity under the "about to" provision of Section 210.

As noted above, however, evidence that the complainant engaged in protected activity is only the first of four <u>prima</u> <u>facie</u> requirements under Section 210. Macktal must also show that the evidence is sufficient to permit an inference that the protected activity was the likely reason for the adverse action. It is at this point that his claim collapses. In addition to expressing his intention to file a complaint with the NRC, Macktal also stated in his memorandum: "In a[n] effort to preserve my health and avoid any further harassment, I wish to be relieved of my duties until the TEC, NLRB, NRC can resolve these matters." The ARB observed that "[i]t would have required considerable mental gymnastics on the part of Brown & Root managers to recognize that, when Macktal said he wanted to be relieved of his duties, he really meant he wanted to be reassigned to work that did not require him to violate NRC procedures." <u>Macktal v. Brown & Root, Inc.</u>, 86-ERA-23, slip op. at 5 (Sec'y Dec. Jan. 6, 1998). Thus, the ARB concluded, "[w]e agree

with the ALJ that a reasonable person could only interpret Macktal's request as a resignation and could not be held responsible for failure to intuit what Macktal now claims was on his mind." Id., slip op. at 5-6. The ARB's conclusion is clearly supported by substantial evidence, and we do not find it to be arbitrary, capricious, an abuse of discretion, or otherwise contrary to law. Thus, the Final Decision and Order of the ARB must be affirmed.

IV.

For the foregoing reasons, Macktal's petition for review is DENIED and the Final Decision and Order of the ARB is AFFIRMED.[5]

---

[5]Brown & Root argues that it is entitled to an award of sanctions under 28 U.S.C. §§ 1912 and 1927 and FED. R. APP. P. 38. We do not find that Macktal's appeal was frivolous or meritless. Therefore, Brown & Root's request for sanctions is denied.