**Joseph J. MACKTAL, Jr., Plaintiff,**

v.

**Billie P. GARDE, et al., Defendants.**

No. CIV.A.89–2533 JGP.

United States District Court,
District of Columbia.

July 18, 2000.

Jay Loring Cohen, Chevy Chase, MD, for Joseph J. Macktal, Jr., plaintiffs.

David Howard Cox, Nicholas Stillwell McConnell, Washington, DC, Vernon Webster Johnson, III, Jackson & Campbell, P.C., Washington, DC, for Billie P. Garde, Anthony Z. Poisman.

Linn Kaiser Redway, Mark R. Merley, Arnold & Porter, Washington, DC, for Louis C. Clark, Government Accountability Project.

David Charney Vladeck, Allison M. Zieve, Public Citizen Litigation Group, Washington, DC, for Scott Armstrong, Bertrand Berube, Marjorie Bernard.

## *MEMORANDUM*

JOHN GARRETT PENN, District Judge.

Currently pending before the Court are defendants' **Motion to Dismiss Plaintiff's Amended Complaint** and plaintiff's **Motion for Leave to File a Second Amended Complaint.** For the reasons set forth in this memorandum, defendants' Motion to Dismiss Plaintiff's Amended Complaint is granted and plaintiff's Motion for Leave to File a Second Amended Complaint is denied.

## *BACKGROUND*

In 1986 plaintiff was removed by his employer, Brown & Root, Inc. ("B & R"), from his position as an electrician at a nuclear power facility in Texas. Believing that he had been removed from the site in retaliation for raising safety concerns about the facility, plaintiff retained defendant Billie Garde of the Environmental Whistleblowers Protection Project ("EWPP") to advise him as to possible

remedies against B & R. The EWPP, a non-profit organization that attempted to provide representation for indigent individuals whose employers had discriminated against them for raising or reporting safety concerns, was a joint project of two umbrella organizations, the Government Accountability Project ("GAP") and Trial Lawyers for Public Justice ("TLPJ").

Ms. Garde arranged for defendant Anthony Roisman to serve as co-counsel, and a complaint was filed with the Department of Labor against B & R on Mr. Macktal's behalf in February 1986. A hearing in this administrative action was scheduled for November 16. In lieu of the hearing, however, according to plaintiff's complaint in this case, Ms. Garde and Mr. Roisman entered into settlement negotiations with B & R, ultimately reaching a settlement agreement that was to pay Mr. Macktal $15,000 and his lawyers $20,000. This settlement agreement is at the heart of this case.

In this action, filed on September 8, 1989, plaintiff's principal allegation is that Ms. Garde and Mr. Roisman coerced him into accepting the settlement agreement by threatening him with liability for litigation costs in the event he did not settle the claim. *See* Amended Complaint at ¶¶ 19–21, 24, 26, 38. Plaintiff also alleges other acts of malfeasance by defendants[1] in connection with their representation of him, such as the mishandling of the proceeds of the settlement, *see id.* at ¶¶ 27, 30, 43, 77; failing to supervise Ms. Garde adequately in connection with the litigation, *see id.* at ¶¶ 75–78; and neglecting Mr. Macktal's claim before the Texas Employment Commission, *see id.* at ¶¶ 14, 36–37.

Prior to and throughout the initiation and vigorous prosecution of this action, the administrative action between plaintiff and B & R had been ongoing. On September 9, 1988, plaintiff filed a Request to the Secretary of Labor Not to Approve the Settlement and for Remand. In this request, plaintiff asserted that the Secretary should set aside the settlement on several grounds, including the ground that he entered into the settlement only as a result of fraud and duress by his counsel. On November 14, 1989, the Secretary issued an order concluding that plaintiff's claim of duress did not provide a ground for repudiating the settlement agreement. The Secretary also concluded that paragraph 3 of the Settlement Agreement, which purported to restrict plaintiff's ability to testify in other judicial and administrative proceedings was void as against public policy. Accordingly, the Secretary severed paragraph 3, but upheld the remainder of the agreement.

On appeal, however, the United States Court of Appeals for the Fifth Circuit vacated the Secretary's Order. *Macktal v. Secretary of Labor*, 923 F.2d 1150 (5th Cir.1991)("*Macktal I*"). The court concluded that the Secretary did not have authority to sever a material provision of the Settlement Agreement entered into by the parties and impose a new redacted version on them without their consent. *See id.* at 1155–56.[2] Accordingly, the Fifth Circuit vacated the Secretary's order and remanded the matter to the Secretary for further consideration. *Id.* at 1151. Due to this remand, on May 11, 1992, the Court temporarily administratively dismissed this lawsuit pending resolution of the ad-

---

1. In addition to Ms. Garde, Mr. Roisman, GAP and TLPJ, the Amended Complaint names as defendants Louis Clark, Executive Director of GAP; Bertrand Berube, Scott Armstrong and Marjorie Bernard, corporate directors of GAP; and the Citizen's Legal Clinic, a non-profit corporation located in the District of Columbia. Amended Complaint at ¶¶ 4–10.

2. In addition, because the issue of alleged duress by plaintiff's former counsel was likely to arise on remand, the Fifth Circuit reached this issue and concluded that the Secretary's finding that plaintiff's allegations of duress did not warrant invalidation of the agreement was not an abuse of discretion. *See id.* at 1157–58.

ministrative action between plaintiff and B & R by the Department of Labor.

On remand, the Secretary issued a new order in October 1993 disapproving the settlement and remanding the case to an administrative law judge ("ALJ") for a hearing on the merits. *Macktal v. U.S. Dept. of Labor*, 171 F.3d 323, 326 (5th Cir.1999)("*Macktal II* "). The ALJ held a hearing on the merits in February 1996, and ruled that internal whistle blowing was not protected activity under section 210 [3] and the prior rulings of the Fifth Circuit, and therefore Macktal's internal complaints could not be considered as support for his retaliation claim. *Id.* In November 1996, the ALJ issued a Recommended Decision and Order granting B & R's motion for summary judgment. *Id.* In January 1998, after further briefing, the Department of Labor's Office of the Administrative Review Board ("ARB") issued a Final Decision and Order dismissing Macktal's complaint, finding that Macktal had not engaged in any protected activity under ERA. *Id.*

Plaintiff appealed this decision to the Fifth Circuit. Although its reasoning differed somewhat from that of the ARB, the Fifth Circuit concluded that the ARB acted correctly in dismissing Macktal's complaint. *Id.* The Fifth Circuit considered two different activities which Macktal claimed were protected activities for the purpose of section 210. First, the court considered Macktal's complaints to SAFETEAM, a semi-independent program endorsed by the Nuclear Regulatory Commission ("NRC") designed to review whistle blower allegations. Following Fifth Circuit precedent, the court concluded that complaints to SAFETEAM "did not constitute either a complaint to an agency or commencement of a proceeding under [section 201.]" *Macktal II*, 171 F.3d at 328 (citing *Ebasco Constructors v. Martin*, 986 F.2d 1419 (5th Cir.1993)).

Second, the court turned to Macktal's memorandum expressing his intention to file a complaint with the NRC. The court concluded that drafting such a memorandum was protected activity under section 210. *Macktal II*, 171 F.3d at 329. However, the court concluded that Macktal was unable to show that the evidence was sufficient to permit an inference that the protected activity was the likely reason for the adverse action, a required element for his retaliation claim. *Id.* The court went on to affirm the ARB's conclusion, finding that it was clearly supported by substantial evidence, and that it was not arbitrary, capricious, an abuse of discretion, or otherwise contrary to law. *Id.* Macktal's case against B & R ended with the Fifth Circuit affirming the ARB's dismissal of his complaint.

The administrative matter and resulting appeals concerning Macktal's claim against B & R having been resolved, attention returned to the proceedings in this Court. On February 22, 2000, this Court granted plaintiff's motion to reinstate the case. The parties were given an opportunity to file supplemental memoranda on outstanding motions, particularly defendants' motion to dismiss and plaintiff's motion for leave to file a second amended complaint. The Court heard arguments on defendants' motion to dismiss at a status conference on March 16, 2000. Having considered the entire record herein, the Court is ready to rule on the pending motions.

## DISCUSSION

### I. Defendants' Motion to Dismiss Plaintiff's Amended Complaint

Plaintiff's Amended Complaint alleges the following causes of action against the defendants: professional malpractice (Count I), breach of contract (Count II), fraud (Counts III and IV), tortious interference with judicial remedy (Count V), negligence (Count VI), and breach of fidu-

---

**3.** Macktal's claim against B & R was brought under Section 210(c)(1) of the Energy Reorga-

nization Act ("ERA"), 42 U.S.C. § 5851(c)(1) (1978). *See Macktal II,* 171 F.3d at 325.

ciary duty (Count VII). The Court will examine each of these counts in turn.

In Count I, plaintiff lists several actions taken by defendants which he alleges amount to professional malpractice, including neglect of his case, concluding a settlement agreement that plaintiff was not satisfied with, coercing plaintiff into signing the settlement agreement, threatening plaintiff that he would have to pay his attorneys $12,000 in fees if he wanted to reject the settlement and continue litigating, collecting $20,000 in fees from the settlement, failure to preserve the identity of funds entrusted to Garde, and general failures to act in comport with the District of Columbia and American Bar Association Codes of Professional Responsibility. Amended Complaint at ¶¶ 36–48.

The elements for proving professional malpractice in the District of Columbia are prescribed in *Niosi v. Aiello*, 69 A.2d 57 (D.C.1949).[4] In *Niosi*, the court held that to establish a claim of professional malpractice,

> the plaintiff must prove three things in order to recover: (1) the attorney's employment; (2) his neglect of a reasonable duty; and (3) that such negligence resulted in and was the proximate cause of loss to the client. And the test of the sufficiency of the declaration in such a suit is whether its allegations, if proven, would make out a case.

*Niosi*, 69 A.2d at 60.

Assuming, *arguendo*, that the defendants were attorneys in plaintiff's employment, and that the actions alleged were neglectful of the reasonable duty defendants owed to plaintiff, the Court turns its focus to whether plaintiff can sufficiently allege whether these actions were the proximate cause of any injury plaintiff suffered. When considering whether plaintiff can satisfy this burden, the Court keeps in mind a corollary to the *Niosi* rule, which states that

[the] rule to be applied in a case where an attorney is accused of negligence in the conduct of litigation is that such attorney is not liable for negligence if, notwithstanding the negligence, the client had no cause of action or meritorious defense as the case may be[.]

*Niosi*, 69 A.2d at 59; *see also McCord v. Bailey*, 204 U.S.App. D.C. 334, 339, 636 F.2d 606, 611 (1980)(attorney not liable for malpractice if his client suffered no damages); *Smith v. Haden*, 872 F.Supp. 1040, 1044 (D.D.C.1994)(to prove proximate cause plaintiff must show she had a good cause of action against the party she wished to sue, otherwise plaintiff "loses nothing by the conduct of [her] attorney even though the latter was guilty of gross negligence" (quoting *Niosi*, 69 A.2d at 60)).

■ The clear rule of *Niosi* and its progeny is that in order to maintain a legal malpractice action in the District of Columbia, plaintiff must demonstrate not only that the alleged malpractice was the proximate cause of the injury suffered, but also that the action for which the plaintiff had sought the attorney's services was a good cause of action. Thus, the Court must evaluate the so-called "case within the case" to determine if it was a good cause of action. If the case within the case was not a good cause of action, then the claim of professional malpractice must fail. This standard requires a plaintiff to demonstrate that his underlying case would have succeeded absent the alleged malpractice.

■ It is at this point that defendants argue plaintiff's malpractice claim fails. Defendants argue that plaintiff can never demonstrate that his underlying case would have succeeded absent the alleged malpractice because the Fifth Circuit has held, rather decisively, that plaintiff never had a cognizable claim against Brown & Root in the first place. *See Macktal II*, 171 F.3d at 328–29. Furthermore, the

---

**4.** At oral arguments the parties agreed that since the defendants were attorneys practic-

ing in the District of Columbia, the law of that jurisdiction applies in this case.

doctrine of collateral estoppel prevents the Court from revisiting the conclusions of the Fifth Circuit.[5] Therefore, since plaintiff never had a good cause of action against Brown & Root, he cannot now sue for malpractice in the legal representation he sought against Brown & Root on that cause of action.[6]

Plaintiff further alleges that he should be allowed to argue that his case, prior to the Fifth Circuit's final decision rejecting his claims against B & R, had a settlement value higher than what his attorneys actually settled the case for. Plaintiff wishes to recover this lost settlement value. Although a cause of action may exist under some circumstances against an attorney for failure to negotiate a reasonable settlement of a case, plaintiff has given this Court no authority which would allow an attorney to be sued for lost settlement value in a case which could not have been won on the merits. Furthermore, a recommended settlement is generally considered a protected judgment call in which the attorney has broad discretion and for which the attorney is not liable for a mere error of judgment. Settlements necessarily involve compromise, as well as considerations evaluated in the thick of litigation, and so hindsight challenges to recommended settlements as being inadequate must fail if they are based only on speculation about what alternative results could have been achieved. *See* R. Mallen & J. Smith, *Legal Malpractice*, § 29.38 at 746–48, 754–57 (4th Ed.1996 & Supp.1999).

■ The Court now turns its attention to the remaining claims plaintiff alleges

against defendants. All of the remaining claims are, in one form or another, restatements of the malpractice claim in tort or contract form. The District of Columbia Court of Appeals has held that claims such as these must generally reach the same result as the underlying malpractice claim. In *O'Neil v. Bergan,* 452 A.2d 337 (D.C. 1982), plaintiff brought lawsuit against her lawyers claiming legal malpractice and breach of contract. The Superior Court of the District of Columbia directed verdict in favor of the defendants. The Court of Appeals affirmed the directed verdict, finding that plaintiff had failed to meet her prima facie burden for alleging attorney negligence and legal malpractice. *O'Neil,* 452 A.2d at 342. The court also affirmed the directed verdict on the related breach of contract claim, holding that "[w]hether a complaint is based on tort or breach of contract . . ., 'the liability of an attorney for failure to properly perform his duties is governed by the [same] general standard of care.'" *Id.,* at 343 (collecting authority). Thus *O'Neil* stands for the proposition that if the underlying malpractice claims fails, tort and contract claims arising from the same transaction must also fail. Additionally, in *Asuncion v. Columbia Hospital for Women,* 514 A.2d 1187, 1190 (D.C.1986), the court similarly held that

> [a]lthough contract and tort claims arising out of the same incident theoretically have different requirements of proof and assessments of damages, as well as different rules governing assignability of claims and periods of limitation, we have

5. The Court understands that the Fifth Circuit decision has become the final decision in this matter, as plaintiff has not sought review of the decision by the United States Supreme Court.

6. Plaintiff urges the Court to follow the holding in *Swann v. Waldman,* 465 A.2d 844 (D.C. 1983), in which the court reversed an order granting summary judgment to attorneys in a legal malpractice action because there were several genuine issues of material fact which precluded summary judgment for either par-

ty. However, *Swann* is clearly inapposite to the present case because there was no allegation in *Swann* that the underlying cause of action was not a good cause of action. As the Court has explained, *Niosi* clearly requires that the underlying claim must have been a good cause of action in order to maintain a legal malpractice claim. Since plaintiff cannot demonstrate that the underlying cause of action was a good one, dismissal is appropriate. The Court does not need to reach an evaluation of the issues in *Swann.*

noted that, in professional malpractice cases, alleged negligence and breach of contract are typically premised on the same duty of care and, as a consequence, should typically lead to the same legal result.

This result recognizes that since plaintiff's "breach of contract [claim] is essentially a restatement of [the] professional negligence and breach of fiduciary duty claims stated in a contract context, [plaintiff] must similarly demonstrate that [defendants] breached a duty of care in order to prevail." *Shapiro, Lifschitz & Schram, P.C. v. Hazard,* 97 F.Supp.2d 8, 11–12 (D.D.C.2000)("*Shapiro II* "). Therefore, if plaintiff is unable to prove his professional negligence claim, contract and tort claims which are essentially restatements of the failed malpractice claim must also fail. *See also Shapiro, Lifschitz & Schram, P.C. v. Hazard,* 24 F.Supp.2d 66, 81 (D.D.C.1998)("*Shapiro I* ")(breach of contract claim only survives to extent underlying professional negligence claims survive).[7]

## II. Plaintiff's Motion for Leave to File a Second Amended Complaint

Plaintiff has also filed a motion requesting leave to file a second amended complaint.[8] However, the Court will not grant this motion because plaintiff has not demonstrated that it is possible to amend the Amended Complaint in such a way as to survive the defendants' present motion to dismiss. Due to the Fifth Circuit's determination, it appears to the Court that such amendment is, indeed, not possible. Therefore, plaintiff's Motion for Leave to File a Second Amended Complaint is denied.

## CONCLUSION

For the reasons set forth in this memorandum, defendants' Motion to Dismiss Plaintiff's Amended Complaint is granted and plaintiff's Motion for Leave to File a Second Amended Complaint is denied. An appropriate order accompanies this memorandum.

7. Under *Boynton v. Lopez,* 473 A.2d 375 (D.C. 1984), plaintiff argues that his fraud claim should survive the dismissal of the legal malpractice claim. *Boynton* involved a former client suing an attorney for misrepresentations involving settlement. *Boynton,* 473 A.2d at 376. The attorney explained to the client that the $10,000 settlement would be forthcoming. The attorney also stated that he explained that the insurance company the client was suing would only pay $1,451.76. The remainder would come from his forgiveness of $2,500 in legal fees the client owed him, as well as $6,000 from the client's former attorney, which would be in the form of a promissory note. *Id.* The client contested this explanation. After receiving only the payment from the insurance company, the client sued her attorney for the remainder of the $10,000 under breach of contract and fraud. The trial court entered a directed verdict for the attorney on the contract claim, and the jury found for the client on the fraud claim. *Id.* The attorney appealed the fraud verdict on several grounds. The issue relevant to the present matter is the attorney's argument that once the trial court dismissed the contract count, the fraud count should have been dismissed

as well, since "in the absence of the formation of a contract, the fraud action based upon a fraudulent inducement to contract could not be sustained." *Boynton,* 473 A.2d at 377. The appeals court rejected this argument, holding that "the two actions were based upon independent legal theories which require the proof of different facts." *Id.* However, *Boynton* does not apply to this case as easily as the plaintiff suggests. For starters, *Boynton* did not involve a failed underlying malpractice claim. Furthermore, the fraud claims found in Counts III and IV of plaintiff's Amended Complaint appear to the Court to be restatements of the malpractice claim in tort form. The rule of *O'Neil, supra,* and its progeny controls with respect to the disposition of claims which are restatements of a failed underlying malpractice claim.

8. According to plaintiff, the proposed Second Amended Complaint "cures an alleged pleading defect cited by defendants, amplifies plaintiff's causes of action and adds a claim for an equitable accounting." Plaintiff's Motion for Leave to file a Second Amended Complaint at 1 (filed Feb. 21, 1990).