Shirley Ann **PEREZ**, Plaintiff,

v.

Daniel **GOLDIN**, et. al. Defendants.

No. 02–149 (RJL).

United States District Court,
District of Columbia.

Sept. 30, 2003.

Shirley Ann Perez, Waldorf, MD, pro se.

Daria Jean Zane, William Mark Nebeker, U.S. Attorney's Office, James H. Falk, Jr., Epstein Becker & Green, P.C., Washington, DC, for Defendants.

## MEMORANDUM OPINION AND ORDER

LEON, District Judge.

Before the Court are separate motions by each of the defendants, Daniel Goldin, Administrator, National Aeronautics and Space Administration ("NASA"), and James Falk, Jr. ("Falk"), to dismiss this case in which Plaintiff Shirley Ann Perez ("Perez") seeks to rescind a voluntary settlement agreement and reinstate her Title VII claim against NASA. After consideration of each party's submissions and the relevant law, the Court grants each defendant's motion to dismiss and dismisses this case with prejudice.

## I. Background

Plaintiff Perez filed an administrative complaint, on June 4, 1999, with her employer, NASA, for race, age, and sex discrimination and retaliation, when NASA denied her promotion to a GS–15 position. Compl. at 1, 3. In sum, Perez contended in the administrative complaint that NASA had promoted her white co-workers to positions for which she was qualified.[1] Perez now asks this Court to rescind the settlement agreement she entered with NASA, because she does not feel that she received "good representation" (Compl. at 14) from defendant Falk, her counsel in the earlier

race, age and retaliation complaint, against NASA, and to reinstate her original discrimination complaint.

According to Perez, she hired Falk to represent her in the earlier Title VII claim because Falk had successfully litigated at least four cases against NASA and "he knew how NASA worked." Compl. at 3. Nearly two years passed between the filing of her administrative complaint on June 4, 1999, and the scheduling of an administrative hearing.[2] Compl. at 4. On May 15, 2001, NASA presented Perez with a draft of a settlement agreement. After reviewing the draft, Perez rejected NASA's proposed settlement and asked Falk to send NASA a letter asking NASA to incorporate three revisions into the May 15, 2001, draft of the settlement agreement. Def.'s Statement of Material Facts, ¶ 4. NASA's May 15, 2001, settlement proposal of the agreement—that Perez admits she read (Compl. at 6)—included a clause that provided if the agreement were signed, it would become "binding and enforceable in seven (7) calendar days following the latest signature date of the agreement. Ms. Perez may revoke this agreement in writing at any time prior to the expiration of this seven (7) day period." Def.'s Statement of Material Facts, ¶ 3 (citing Ex. 5, ¶ 10). Perez' revisions had nothing to do with the seven-day clause, and thus this exact language later became part of the finalized settlement agreement.

1. When Perez applied for this promotion, she submitted her paperwork to the Personal Office along with three of her white co-workers. According to Perez, NASA Personnel found that none of the four applications supported a promotion, but the packages of the white employees were returned to them with suggested wording and guidance as to how to improve the application, while Perez' application was declined. Compl. at 2. NASA later promoted the white employees effective July 18, 1999,

but, after NASA audited Perez's job it found that her job did not support the GS–15. Compl. at 3.

2. Perez originally felt that an Administrative Hearing would be a waste of time, but Falk informed her that this hearing would allow them to gather necessary information from witnesses' testimonies. Compl. at 5.

The administrative hearing was to take place at NASA's headquarters on May 30, 2001. On that day, right before the hearing began, NASA presented Perez with a revised version of the settlement agreement. Both Perez and Falk signed the agreement on May 30, 2001. The next day, on June 1, 2001, Daniel R. Mulville, Associate Deputy Administrator, signed the agreement on behalf of NASA. The agreement explicitly stated that Perez should discuss the agreement with her lawyer.[3] Perez admits that she skimmed the agreement but signed it without first consulting with Falk, even though he was present when she "skimmed" it and signed it. Compl. at 7. Perez claims that she did not discuss the agreement with Falk, or ask any questions, because she did not want to go forward with the hearing. According to Perez, the fact that the hearing would take place at NASA, made her uncomfortable, and, additionally, she felt she would "inconvenience everyone if she tried to read the information." Compl. at 7.

Perez alleges that she thought she had twenty-one days in any event, "to change her mind." Pl.'s Opp'n at 2. However, although the agreement did state that Perez had twenty-one days from the date of receipt of the agreement to review the terms and conditions before signing agreement, the agreement clearly provides that Perez had *seven days* from the date of the last signature to *revoke* it. Compl. at 7. The agreement also states that, by signing the agreement, Perez agreed to withdraw, with prejudice, her administrative complaint and to waive all future rights to file complaints, appeals, or civil litigation arising out of events prior to the execution of the agreement. Def.'s Statement of Material Facts, ¶ 4 (citing Ex. 5, ¶¶ 2e, 8).

Although Perez admits she read the second settlement agreement at the administrative hearing on May 30, 2001, and re-read the agreement that same evening, it was not until June 12, 2001—twelve days after signing the agreement—that Perez e-mailed Falk to tell him that she had been reluctant to sign the agreement. Def.'s Statement of Material Facts, ¶ 6; Compl. at 9 (citing Enclosure B). Specifically, Perez informed Falk that she did not "feel good" about having signed the agreement and because she had not received a final signed copy of the agreement, the agreement was not valid because she was within the twenty-one day review period. Compl. at 9 (citing Enclosure B). The next day, on June 13, 2001, Falk faxed NASA a memo stating that Perez wished to withdraw from the agreement. Compl. at 9 (citing Enclosure C). On June 14, 2001, NASA responded, stating that the agreement was binding because Perez had already missed the deadline to revoke the agreement. Compl. at 9. Consequently, on June 20, 2001, Falk sent NASA a letter withdrawing the June 13, 2001, revocation letter, and reaffirmed the settlement agreement. Def.'s Statement of Material Facts, ¶ 6 (citing Ex. 7). Perez is now asking the Court to overturn the Settlement Agreement that she entered with NASA because she does not feel that she received "good representation" from Falk, and therefore she should be allowed to

---

**3.** The agreement that Perez signed read, "Ms. Perez is hereby advised to consult with an attorney prior to executing this Agreement. Ms. Perez acknowledges that she has the opportunity to have her attorney review and explain the provisions of this Agreement to her and that the Agency has provided sufficient time for this purpose." Settlement Agreement ¶ 7. The agreement also included a provision that Ms. Perez acknowledged that she voluntarily entered the settlement and that NASA "did not impose any undue hardship, duress, or coercion in connection with the execution of this document." Settlement Agreement ¶ 9.

proceed with her discrimination complaint. Compl. at 14.

## II. Discussion

### A. *Standard of Review*

This Court will grant a motion to dismiss for failure to state a claim if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Fed.R.Civ.P. 12(b)(6). When reviewing a motion to dismiss, the Court accepts all the complainant's well-pleaded allegations as true and construes them in the light most favorable to the plaintiff. *See Gray v. Bell,* 712 F.2d 490, 493 n. 2 (D.C.Cir.1983); *see also Hosey v. Jacobik,* 966 F.Supp. 12, 13 (D.D.C.1997) (citing *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). When construing all the plaintiff's well-pleaded factual allegations as true the Court will exclude those that are over-broad and unsupported by specific factual averments. *See Haynesworth v. Miller,* 820 F.2d 1245, 1254 (D.C.Cir.1987); *see also Mount v. Baron,* 154 F.Supp.2d 3, 5 n. 1 (D.D.C.2001) (citation omitted). The Court finds that Perez has failed to state a claim regarding both NASA and Falk.

### B. *Recission of Settlement Agreement entered into with NASA*

 In sum, Perez asks this Court to rescind the settlement agreement as she allegedly signed it under duress. However, contrary to Perez's assertions, the Court finds that Perez voluntarily signed the settlement agreement and had full knowledge of the seven-day revocation clause, therefore, she is precluded from asserting those claims here.

The facts clearly demonstrate that Perez voluntarily entered the settlement agreement with NASA; therefore, recission is unwarranted. *See Kessler v. Lincoln Nat'l Life Ins. Co.,* 620 F.Supp. 282, 285 (D.D.C. 1985) (rejecting plaintiff's claim that contract is unconscionable because the settlement provision was entirely optional and thus recission is completely unwarranted). The Court finds Perez' argument that the agreement should be revoked because she was under duress to have little merit. Perez argues that she felt she would inconvenience everyone if she took the time to read the agreement, and, as a result, she did not know about the seven-day revocation clause. The Court finds that Perez knew or should have known about the seven-day clause because she concedes that she read the first proposed settlement agreement, which contained the clause. She did not strike that clause when making a counter-offer to the first proposal, but only added provisions to NASA's first proposed agreement. She skimmed the agreement before signing it; and she re-read the agreement the evening after she signed it. Even if Perez had not read this clause the first two times she reviewed the agreement, she had ample opportunity to review the entirety of the agreement after she signed it, which she concedes she did in her own home, the very evening she signed the agreement.

Because Perez voluntarily signed the settlement agreement, she has no basis to avoid the terms of the agreement itself. By signing it, Perez agreed to withdraw, with prejudice, her administrative complaint and to waive all future rights to file complaints, appeals, or civil litigation arising out of events prior to the execution of the agreement. Thus, the Court finds that Perez cannot reinstate her discrimination complaint against NASA.

In addition, Perez cannot unilaterally rescind the settlement agreement. *Village of Kaktovik,* 689 F.2d 222, 230 (D.C.Cir. 1982) (citation omitted). Settlement

agreements are governed by state contract law. *See Makins v. District of Columbia,* 277 F.3d 544, 547 (D.C.Cir.2002); *Village,* 689 F.2d at 230. A settlement agreement is enforceable, under contract law, if there is agreement to all material terms and an intention of the parties to be bound. *U.S. v. Mahoney,* 247 F.3d 279, 285 (D.C.Cir. 2001). If the language of the agreement is disputed, the court must determine what a reasonable person in the position of the parties would have thought the language to mean, because an objective reasonable person is presumed to know all the circumstances signing the agreement. *See Richardson v. Edwards,* 127 F.3d 97, 101 (D.C.Cir.1997) (explaining that the test a court should apply when reviewing an agreement is what a reasonable person in the position of the parties would have thought the language meant).

A reasonable person in Perez' position would have understood that the agreement could be revoked only within the seven-day period. NASA had presented Perez with a draft of the settlement agreement that she read carefully enough to review, reject, and make counter-proposals to. When NASA presented Perez with the final agreement, she had the opportunity to read this version before signing it. Included in the terms of both the draft of the agreement, and the final agreement, was the seven-day revocation clause. Thus, the Court finds that Perez, just as a reasonable person would, knew that she had seven days to revoke the while signing the agreement.

Finally, the Court notes that public policy encourages the drafting of settlement agreements and, likewise, settlement agreements are highly favored by the judicial system because they allow the parties to avoid the expense and delay of full litigation. *Schneider v. Dumbarton Developers, Inc.,* 767 F.2d 1007, 1015 (D.C.Cir.

1985). In sum, the Court finds that the Perez entered the agreement voluntarily and like any reasonable person, would have understood that she only had seven days to revoke the agreement. Additionally, the Court notes that settlement agreements are favored by the judicial system. For these reasons, the Court dismisses Perez' claim against NASA.

C. *Failure to state a claim against Falk*

Perez also bring suit against her former counsel, Falk, claiming that he was "instrumental" in her case against NASA, and he failed to provide adequate representation to her. Pl.'s Opp'n at 1. The Court rejects these contentions and finds that Perez' claims against Falk should be dismissed and Perez fails to state a claim for legal malpractice against Falk.

■ In a malpractice case, the test of sufficiency of the claim is whether the allegations, if proven, would state an actionable dispute. *See Macktal v. Garde,* 111 F.Supp.2d 18, 21 (D.D.C.2000); Fed. R.Civ.P. 12(b)(6). To state a claim for professional malpractice, a party must allege facts that establish (1) that the attorney had a duty to use such skill, prudence, and diligence as other members of this profession commonly possess and exercise, (2) a breach of that duty, (3) a proximate causal connection between the negligent conduct and the resulting injury, and (4) actual loss or damage resulting from the attorney's malpractice. *See Mount,* 154 F.Supp.2d at 8 (citation omitted) (discussing the standard for legal malpractice).

■ Perez does not state a cognizable claim for legal malpractice against Falk. Perez merely alleges that Falk "was not working with her best interests in mind; instead he was working for himself and this benefited NASA." Compl. at 13–14. Furthermore, Perez' complaint alleges no causal connection between her alleged in-

jury and Falk's conduct as her counsel. She states only that she has experienced stress and other health problems, as she has been diagnosed with a health condition; but, she admits that the cause of these health conditions, which could go away or could require treatment, is unknown, and that she was found to be in good health in November 2000. Compl. at 14. Moreover, Perez has not made any specific allegations to support a claim of malpractice; rather, she has provided scant background facts that are broad and unsupported. *See Haynesworth,* 820 F.2d at 1254 (explaining that the plaintiff's sweeping and unwarranted averments will not considered for the purpose of a motion to dismiss). The Court concludes that further discovery would not uncover any evidence, which would provide adequate support for these allegations that, if proven true, would state an actionable dispute. *See Mount,* 154 F.Supp.2d at 8 (citation omitted); Fed.R.Civ.P. 12(b)(6). Thus, the Court dismisses Perez' claim against Falk.

### III. Order

For the foregoing reasons, it is on this 30th day of August 2003, hereby

ORDERED that defendant NASA's motion to dismiss [# 9] this case is GRANTED; it is further

ORDERED that defendant Falk's motion to dismiss [# 2] this case is GRANTED;

SO ORDERED.