# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 13, 2008

Charles R. Fulbruge III
Clerk

No. 07-60509
Summary Calendar

MARGOT GETMAN

Petitioner

V.

ADMINISTRATIVE REVIEW BOARD, UNITED STATES DEPT OF LABOR

Respondent

Appeal from the United States Department of Labor
ARB Case No. 04-059

Before HIGGINBOTHAM, STEWART, and OWEN, Circuit Judges.

PER CURIAM:[*]

Margot Getman, a research analyst for Southwest Securities, Inc. ("Southwest"), refused to recommend a high rating for a stock that she reported on. Her supervisors questioned this decision in a meeting. She told them that they could recommend a higher rating but that she would not sign on to the report if they did so. The firm later terminated her. She filed a whistleblower complaint with OSHA pursuant to Section 806 of the Corporate and Criminal Fraud Accountability Act of 2002 ("Sarbanes-Oxley"). OSHA dismissed her

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

complaint, and she requested an administrative hearing. An administrative law judge's recommended decision concluded that Getman engaged in protected activity that contributed to her termination. Southwest appealed to the Administrative Review Board. The Board held that Getman had not participated in a protected activity. Getman moved for reconsideration, and the Board denied the motion. She appealed to the Second Circuit; the Second Circuit transferred the case to this court.

I

Margot Getman began working as an equity research analyst for Southwest in 2000. She researched companies and wrote reports; Southwest published these reports for their clients. Cholestech had requested a report to distribute to potential investors, as it wanted to raise capital. In November 2001, Getman presented a report on Cholestech Corporation to Southwest's Review Committee. Getman did not include a company rating in her report on Cholestech but indicated at the meeting that she would recommend a stock rating of "accumulate" – a weak rating compared to the recommendation of "strong buy." The Committee questioned her decision, asking for the reasoning behind her recommendation. At the end of the meeting, Getman told the Committee that they could change the rating but that she would not sign on to this change. She did not inform the Committee that she believed that changing the rating would violate any securities law. Nor did anyone on the Committee tell her to change the recommendation. On appeal, she alleges that she did not raise concerns regarding the legality of a rating change because "[t]he very people to who[m] Appellant might have complained or registered her concerns were present at the Investment Committee Meeting."

After the meeting, Getman's supervisor allegedly became hostile toward her. Southwest terminated Getman in July 2002. In November 2002, Getman filed a complaint with OSHA under Section 806 of Sarbanes-Oxley. OSHA

dismissed her complaint, finding that Getman's activity was protected but that she had not proven that the activity contributed to her termination. She requested a hearing under 29 C.F.R. § 1980.106. The ALJ held a hearing, concluding in February 2004 that Getman had engaged in protected activity that contributed to her termination. Southwest appealed to the ARB. The Board issued a Final Decision and Order in July 2005, concluding that "Getman's unexplained refusal to change her recommended rating of the Cholestech stock was not protected activity." Getman moved for reconsideration in September 2005, and the Board denied reconsideration in March 2006. Getman appealed to the Second Circuit in April 2006. The Second Circuit found improper venue and transferred the case to this court in June 2006.

II

Sarbanes-Oxley applies to a limited category of protected activity, providing,

> No [publicly-traded securities company] or any officer, employee, contractor, subcontractor, or agent of such company, may discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of any lawful act done by the employee--
>
> (1) to provide information, cause information to be provided, or otherwise assist in an investigation regarding any conduct which the employee reasonably believes constitutes a violation of section 1341, 1343, 1344, or 1348, any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders, when the information or assistance is provided to or the investigation is conducted by--
>
> (A) a Federal regulatory or law enforcement agency;
>
> (B) any Member of Congress or any committee of Congress; or
>
> (C) a person with supervisory authority over the employee (or such other person working for the employer who has the authority to investigate, discover, or terminate misconduct); or

(2) to file, cause to be filed, testify, participate in, or otherwise assist in a proceeding filed or about to be filed (with any knowledge of the employer) relating to an alleged violation of section 1341, 1343, 1344, or 1348, any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders.[1]

Burdens of proof under Sarbanes-Oxley are governed by 49 U.S.C. § 42121(b)[2] and its underlying regulations. A complainant alleging a Section 806 whistleblower violation must make a prima facie showing that, inter alia, she "provided, caused to be provided, or is about to provide (with any knowledge of the employer) or cause to be provided to the employer or Federal Government information relating to any violation or alleged violation"[3] and that "(i) [t]he employee engaged in a protected activity or conduct; (ii) [t]he named person knew or suspected, actually or constructively, that the employee engaged in the protected activity; (iii) [t]he employee suffered an unfavorable personnel action; and (iv) [t]he circumstances were sufficient to raise the inference that the protected activity was a contributing factor in the unfavorable action."[4]

The ARB accepted the ALJ's findings of fact but concluded that Getman had not

---

[1] 18 U.S.C. § 1514A(a).

[2] See 18 U.S.C. § 1514A(b)(2) (establishing the regulatory procedures for "the handling of discrimination complaints under section 806 of the Corporate and Criminal Fraud Accountability Act of 2002, Title VIII of the Sarbanes-Oxley Act of 2002").

[3] 49 U.S.C. § 42121(a)(1); see also 49 U.S.C. § 42121(b)(2)(B) ("The Secretary of Labor shall dismiss a complaint filed under this subsection and shall not conduct an investigation otherwise required under subparagraph (A) unless the complainant makes a prima facie showing that any behavior described in paragraphs (1) through (4) of subsection (a) was a contributing factor in the unfavorable personnel action alleged in the complaint.").

[4] 29 C.F.R. § 1980.104 (setting forth "Procedures for the Handling of Discrimination Complaints under Section 806 of the Corporate and Criminal Fraud Accountability Act of 2002, Title VIII or the Sarbanes-Oxley Act of 2002.").

"provid[ed] information]" at the meeting that she reasonably believed Southwest Securities was about to commit fraud against shareholders or some other securities violation. In our view, her unspecified "refusal" was not sufficient to "provide information" to a person with supervisory authority relating to a violation. In the context of a review committee meeting between an analyst and her supervisor, where disagreement over a rating may be a normal part of the process, the analyst must communicate a concern that the employer's conduct constitutes a violation in order to have whistleblower protection.

Because Getman timely petitioned for review of an ARB holding, we review that holding under "the standard established in the Administrative Procedure Act,"[5] upholding the decision unless it is "'arbitrary, capricious, an abuse of discretion, or otherwise contrary to law.'"[6] Whether Getman's activity was protected activity under Section 806 is a question of law that we review de novo. With or without Chevron deference,[7] we find no error.

Getman argues that her activity was protected because "the circumstances forced upon . . . [her] allowed only two courses of action; she could comply with the committee by upgrading her rating and in doing so violate federal and industry laws and regulations or she could refuse to upgrade her rating." In her

---

[5] Allen v. Admin. Rev. Bd., 2008 WL 171588 at *6 (5th Cir. Jan. 22, 2008) (citing 5 U.S.C. § 706; 49 U.S.C. § 42121(b)(4)(A); 29 C.F.R. § 1980.112(a)); see also Macktal v. United States Dep't of Labor, 171 F.3d 323, 326 (5th Cir. 1999).

[6] Allen, 2008 WL 171588 at *6 (quoting Williams v. Admin. Rev. Bd., 376 F.3d 471, 475 (2004)).

[7] We have not addressed Chevron deference in the context of an ARB decision on Sarbanes-Oxley. It appears that Chevron deference is due, as the ARB is an adjudicative body, but we leave that question for another day. See United States v. Mead, 533 U.S. 218, 226-27 (2001) (holding that "assuming that administrative implementation of a particular statutory provision qualifies for Chevron deference when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority. Delegation of such authority may be shown in a variety of ways, as by an agency's power to engage in adjudication.").

hearing, however, she testified that the members of the committee did not ask her to upgrade the rating;[8] rather, they questioned her opinion and asked her to explain why she recommended the lower rating. Furthermore, she concedes that she never expressed her belief that changing the rating would violate securities law. Her indication at the meeting that the committee could change the rating but that if it did so, she would not sign on to the report, could have meant that she did not believe that the company deserved a higher rating and would not agree to a report that suggested otherwise.

Because the committee did not express an intent to change the rating, and Getman never expressed a belief to any supervisor that changing the rating would violate any securities laws, we cannot read any protected activities into her behavior. Since her behavior was not protected, we need not review whether her protected activity contributed to her termination.

AFFIRMED.

---

[8] See In the Matter of Margot Getman v. Southwest Securities, Inc., U.S. Department of Labor Final Decision and Order, ARB Case No. 04-059. "Q: 'Mr. Hultgren didn't ask you to upgrade your accumulate rating – claimed accumulate rating from accumulate to buy, did he?'" "A: 'He didn't tell me to.'" "Q: 'All right. Any of the other people you claim were present at this review meeting, Mr. Tangun, did he ask you to upgrade your rating from accumulate to buy?'" "A: 'If he did, I don't remember that, no.'" "Q: 'Okay. Kit Case, was he present at this meeting?'" "A: 'I believe him to be present.'" "Q: 'All right. Did he ask you to upgrade your rating from accumulate to buy?'" "A: 'I don't believe so.'" In response to each subsequent question about each member present, Getman responded that the member did not ask her to upgrade the rating.